**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HAYES LEMMERZ INTERNATIONAL, INC., et al., | ) ) | Case No. 09-11655(MFW) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| _____ | ) ) | |
| UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, et al., | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Adv. No. 11-53881 (MFW) |
| HAYES LEMMERZ INTERNATIONAL, INC., et al., | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION**[1]

Before the Court are Cross Motions for Summary Judgment filed by the Defendants Hayes Lemmerz International, Inc.,[2] and certain of its affiliates (collectively, "Hayes") and by the Plaintiffs United Steel, Paper and Forestry, Rubber, Manufacturing, and Energy Allied Industrial and Service Workers International Union (collectively, the "Unions"). For the

---

[1] This Memorandum Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

[2] On February 1, 2012, Hayes Lemmerz International Inc. was acquired by Iochpe Maxion, LLC, a subsidiary of Iochpe-Maxion S.A. and is now known as Maxion Wheels.

reasons stated herein, the Court will grant Hayes' Motion for Summary Judgment and deny the Unions' Motion for Summary Judgment.

I.  BACKGROUND

On May 11, 2009, Hayes filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. At that time, Hayes was obligated under collective bargaining agreements with the Unions to provide vested health benefits to certain retirees of Hayes (the "Retirees").

Beginning in July, 2009, Hayes and the Unions entered into negotiations to modify the retiree benefits covered by the collective bargaining agreements pursuant to section 1114 of the Bankruptcy Code. On November 18, 2009, Hayes and the Unions executed a Settlement Agreement providing for the modification of retiree benefits, which was approved by the Court by Order dated November 23, 2009.

Under section 2 of the Settlement Agreement, Hayes agreed to sponsor and administer at least one healthcare plan for the Retirees and to establish and fund a voluntary employees' beneficiary association (the "VEBA"). (Adv. D.I. 1 at Ex. A.)[3]

---

[3] Citations to pleadings in the bankruptcy case are "D.I. #" and to pleadings in the adversary proceeding are "Adv. D.I. #."

2

In compliance with section 2, Hayes established the Hayes Lemmerz International, Inc., Employee Benefit Plan for Eligible Collectively Bargained Retirees (the "Plan").  The contents of the Plan are described in the combined Summary Plan Description and Plan Document (the "Plan Document"), which incorporated the Settlement Agreement by reference.  (Adv. D.I. 32 at Ex. 8.)

In late November, 2009, AmWINS/NEBCO ("AmWINS"), Hayes' insurance broker and third party administrator, distributed an enrollment kit for the Plan (the "Enrollment Kit") to eligible Retirees and to counsel for the Unions.  (Adv. D.I. 32 at Ex. 3.)  The Enrollment Kit informed the Retirees that coverage would become effective January 1, 2010, for Medicare-eligible Retirees who returned completed enrollment forms before the deadline of December 11, 2009.  At the Unions' request the enrollment deadline was extended to January 31, 2010.  (Adv. D.I. 32 at Ex. 9.)  Approximately 980 Medicare-eligible Retirees enrolled in the Plan prior to the deadline.  Hayes distributed a copy of the Plan Document to the enrolled participants on April 20, 2010.

On May 23, 2011, the Unions requested that premium payments to the VEBA be adjusted for the benefit of Plan participants who had dropped coverage but now sought to re-enroll.  Hayes informed the Unions that the Plan did not allow for re-enrollment.

On November 28, 2012, the Unions commenced the instant adversary proceeding (the "Adversary Proceeding") against Hayes

in which they assert, inter alia, that Hayes breached the Settlement Agreement by precluding re-enrollment in the Plan. On November 30, 2012, both parties filed Motions for Summary Judgment. Briefing is complete and the issue is ripe for decision.

II. JURISDICTION

The Court has subject matter jurisdiction over this core proceeding. 28 U.S.C. § 1334(b) & § 157(1). In Stern v. Marshall, however, the Supreme Court ruled that notwithstanding title 28, bankruptcy courts lack the constitutional authority to enter a final order on state law counterclaims. 131 S. Ct. 2594, 2620 (2011). The Supreme Court held that the bankruptcy court's power depends on "whether the action at issue stems from the bankruptcy itself." Id. at 2618.

In this case, the Adversary Proceeding relates to the conduct of the parties during this bankruptcy case. In addition, pursuant to the Order approving the Settlement Agreement, this Court retained jurisdiction over all matters arising from and related to the implementation of the Settlement Agreement. (D.I. 910 at ¶ 6.) Therefore, the Court concludes that it has jurisdiction and the authority to enter a final order in this Adversary Proceeding because it "relate[s] entirely to matters integral to the bankruptcy case." In re Am. Bus. Fin. Servs.,

4

Inc., 457 B.R. 314, 319 (Bankr. D. Del. 2011).  See also In re Salander O'Reilly Galleries, 453 B.R. 106, 117 (Bankr. S.D.N.Y. 2011) ("Nowhere in . . . Stern does the Supreme Court rule that the bankruptcy court may not rule . . . when deciding a matter directly and conclusively related to the bankruptcy.").

Further, the parties have consented to the Court's jurisdiction.  (Adv. D.I. 1, 4, 29, 30, 33, 34.)  Parties can consent to the entry of a final order by the bankruptcy courts. See, e.g., In re Bellingham Ins. Agency, Inc., 702 F.3d 553, 567 (9th Cir. 2012) (holding that because "consent permits a non-Article III judge to decide finally a non-core proceeding," it "permits the same judge to decide a core proceeding in which he would, absent consent, be disentitled to enter final judgment"). Thus, the Court finds that it has authority to enter a final order in the Adversary Proceeding.

III. DISCUSSION

    A.   Standard of Review

The Court should grant a motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(c).[4]

In considering a motion for summary judgment under Rule 56, the Court must view the inferences from the record in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Hollinger v. Magner Mining Equip. Co., 667 F.2d 402, 405 (3d Cir. 1981). If there does not appear to be a genuine issue as to any material fact and on such facts the movant is entitled to judgment as a matter of law, the Court must enter judgment in the movant's favor. See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986); Carlson v. Arnot-Ogden Mem'l Hosp., 918 F.2d 411, 413 (3d Cir. 1990).

The movant bears the burden of establishing that no genuine issue of material fact exits. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585 n.10 (1985); Integrated Water Res., Inc. v. Shaw Envtl., Inc. (In re IT Grp., Inc.), 377 B.R. 471, 475 (Bankr. D. Del. 2007). A fact is material when it could "affect the outcome of the suit." Anderson, 477 U.S. at 248.

Once the moving party has established its prima facie case, the party opposing summary judgment must go beyond the pleadings and point to specific facts showing there is a genuine issue of

---

[4] Rule 7056 of the Federal Rules of Bankruptcy Procedure incorporates Rule 56 of the Federal Rules of Civil Procedure in adversary proceedings.

fact for trial.  See, e.g., id. at 252; Matsushita, 475 U.S. at 585-86; Michaels v. New Jersey, 222 F.3d 118, 121 (3d Cir. 2000); Robeson Indus. Corp. v. Hartford Accident & Indem. Co., 178 F.3d 160, 164 (3d Cir. 1999).  If the moving party offers only speculation and conclusory allegations in support of its motion, its burden of proof is not satisfied.  See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999).

    B.    The Settlement Agreement and Plan Documents

Both Hayes and the Unions agree that the terms of the Settlement Agreement and Plan Documents are unambiguous and, therefore, not open to judicial interpretation based on extrinsic evidence.  However, their respective interpretations lead them to different conclusions.

The Unions assert that Hayes breached the Settlement Agreement by prohibiting re-enrollment in the Plan by Retirees who were eligible for Medicare as of December 31, 2009, but did not enroll in the plan by January 31, 2010, and by Retirees who did enroll in the Plan, but who subsequently dropped their coverage.  The Unions argue that (1) Hayes did not have the right under the Settlement Agreement to create additional terms in the Plan Document, (2) that the restriction on enrollment for Medicare-eligible Retirees is inconsistent with section 10(d) of the Settlement Agreement, and (3) the prohibition of re-enrollment was not authorized under the Settlement Agreement or

7

the Plan Document itself.

        1. <u>Settlement Agreement</u>

The Unions assert that Hayes lacked authority in the Settlement Agreement to impose additional terms in the Plan Document that the parties did not intend to apply. They contend that the Settlement Agreement is a contract governed by Michigan law. (Adv. D.I. 1, Ex. A at ¶ 22.) <u>See, e.g.</u>, <u>Shay v. Aldrich</u>, 790 N.W.2d 629, 660 (Mich. 2004) (holding that a settlement agreement is a contract between the parties executing the agreement); <u>Walbridge Aldinger Co. v. Walcon Corp.</u>, 525 N.W.2d 489, 491 (Mich. Ct. App. 1994) ("An agreement to settle a pending lawsuit is a contract and is to be governed by the legal principles applicable to the construction and interpretation of contracts."). Under Michigan law, contracts are not open to judicial interpretation and must be enforced as written "absent ambiguity or internal inconsistency." <u>Universal Underwriters Ins. Co. v. Kneeland</u>, 628 N.W.2d 491, 494 (Mich. 2001).

The Unions argue that the parties only agreed to one restriction on the ability of Retirees to participate in the Plan. Pursuant to section 10(d) of the Settlement Agreement, the parties agreed that Retirees who were not yet Medicare eligible had a deadline to enroll: "Pre-Medicare Participants are eligible to receive VEBA benefits when they become Medicare eligible if they enroll in the VEBA within sixty days after first becoming

Medicare eligible." (Adv. D.I. 1, Ex. A. at ¶ 10.)  Thus, the Unions assert that Hayes did not have authority to create additional restrictions on enrollment and re-enrollment in the Plan Document.  If Hayes intended to propose additional enrollment restrictions, the Unions argue that Hayes should have stated them in the Settlement Agreement.

Hayes responds that the Settlement Agreement at issue provides that Hayes "will sponsor and administer at least one healthcare plan for the Union(s)' represented Medicare-eligible Participants." (Adv. D.I. 1 at Ex. A.)  Hayes argues that the "plain meaning" of the Settlement Agreement gives them discretion as Plan "Sponsors" to structure the Plan terms and enrollment provisions. See, e.g., Hughes v. Aircraft Co. v. Jacobson, 525 U.S. 432, 444 (1999) (holding that with respect to ERISA-governed healthcare plans, a plan sponsor is given the authority to determine the plan's form and structure); Nazir v. Miller, 949 F.2d 1323, 1328 (3d Cir. 1991) (noting that an employer is free to develop an employee benefit plan as it wishes because when it does so it makes a corporate management decision, unrestricted by ERISA's fiduciary duties).  Hayes contends that they had the power to design and implement provisions of the Plan, unless otherwise expressly stated in the Settlement Agreement.

The Court agrees with Hayes and finds that the Settlement Agreement authorized Hayes, as the sponsor and administrator of

the Plan, to establish enrollment provisions of the Plan that were not limited to the terms of the Settlement Agreement, so long as they do not directly contravene a provision of the Settlement Agreement. See, e.g., Curtiss-Wright Corp. v. Shoonejongen, 514 U.S. 73, 78 (1995) ("Employers and other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify" health plans.). There is nothing in the Settlement Agreement that precludes Hayes from setting an enrollment deadline or from limiting re-enrollment. Thus, the Court concludes that Hayes had discretion to establish the Plan provisions at issue.

The Unions assert, however, that the Plan's enrollment deadline for Medicare-eligible participants and the prohibition on re-enrollment is inconsistent with section 10(d) of the Settlement Agreement. The Unions argue that only one intended restriction was included in the Settlement Agreement under section 10(d) (for pre-Medicare Retirees) and therefore, no other restriction was intended. Relying on the maxim expressio unius est exclusio alterius – "the expression of the one is the exclusion of the other" – the Unions argue that section 10(d) is the only limitation in the Settlement Agreement regarding enrollment rights. See 5 Arthur Linton Corbin, Corbin on Contracts, § 24.28 (rev. ed. 1998) (stating that when parties "have specifically named one item" in their contract, a court may

10

conclude "they did not intend to include other, similar items not listed").  See also, Clark Bros. Sales Co. v. Dana Corp., 77 F. Supp. 2d 837, 844 (E.D. Mich. 1999) (holding that "[d]efendants' express promise to pay the commissions earned up to the date of termination excludes any implied promise to pay other sorts of commissions").  Therefore, the Unions assert that because the Settlement Agreement was silent with respect to any restrictions on enrollment for Medicare-eligible participants and with respect to any prohibition on re-enrollment, they are precluded by the Settlement Agreement.

The Court finds Clark Bros. distinguishable.  In that case, the definition of what rights were granted under the contract necessarily meant that no other rights were granted.  Here, the rights granted were broad; Hayes was to establish a benefits plan for the Retirees.  Further, the restriction on when pre-Medicare Retirees were to enroll does not suggest, as the Unions assert, that there were no other restrictions on enrollment.  Taken to its logical conclusion, the Unions argue that Retirees were free to enroll, drop out, and re-enroll whenever they wanted.  If Retirees had that freedom, the requirement that pre-Medicare eligible Retirees had to enroll by a set date would be meaningless.  Therefore, the Court concludes that the Unions' interpretation is inconsistent with the express restriction in section 10(d) of the Settlement Agreement.

The restriction on enrollment by pre-Medicare eligible Retirees, in contrast, is entirely consistent with Hayes' interpretation of the Settlement Agreement and Plan provisions which set a date for enrollment by Medicare eligible Retirees (January 31, 2010) and does not permit any re-enrollment if coverage lapses.  Therefore, the Court finds that the Settlement Agreement did not prohibit other enrollment requirements.

### 2. Re-Enrollment Provisions

The Unions argue further that the restriction on re-enrollment is not authorized by the Plan because the Plan Document is silent with respect to re-enrollment provisions.  In this case, the only express limitation on re-enrollment is stated in the Enrollment Kit, which is not enforceable. See, e.g., Gridley v. Cleveland Pneumatic Co., 924 F.2d 1310, 1316 (3d Cir. 1991) (holding that the terms of an overview brochure were not enforceable because the brochure was not a summary plan description); Heidgerd v. Olin Corp., 906 F.2d 903, 907 (2d Cir. 1990) (noting that the ERISA statute intends that "the summary will be an employee's primary source of information regarding employment benefits, and employees are entitled to rely on the descriptions contained in the summary"); Alday v. Container Corp. of America, 906 F.2d 660, 665 (11th Cir. 1990) ("Summary of Benefits Booklet" that lacked much of the information required by 29 U.S.C. § 1022 was not a summary plan description.).

The Enrollment Kit sent out by AmWINS to employees of Hayes in late November 2009, included the deadline for enrollment by Medicare-eligible Retirees and the prohibition on re-enrollment. The Enrollment Kit stated that "[i]f you choose to leave the plan in the future, you will not be eligible to re-join at a later date." (Adv. D.I. 32 at Ex. 3.) It also stated that "[o]nce you have cancelled your coverage, you will not be permitted to re-enroll in the [Hayes] plan in the future." (Id.)

        a.    Laches

On November 23, 2009, the Unions received the Enrollment Kit and thus were on notice of the December 11, 2009, deadline to enroll and the restriction on re-enrollment. It is clear that the Unions were aware of the restrictions on enrollment and re-enrollment because they negotiated an extended enrollment date of January 31, 2010. At no time before the effective date of the Plan, however, did the Unions object to those terms. The Unions waited approximately two years before filing the Complaint and objecting to those provisions. In the meantime, Hayes relied on their authority as Plan Sponsors to structure the terms of the Plan. Thus, the Court finds that the Unions sat on their rights and are now estopped from asserting that Hayes breached the Settlement Agreement. See, e.g., Joint Stock Soc. v. UDV N. Am., Inc., 266 F.3d 164, 185 n. 12 (3d Cir. 2001) ("Laches bars an action from proceeding if there was (1) an inexcusable delay in

13

bringing suit, and (2) material prejudice to the defendant as a result of the delay.") (citing Pappan Enter. v. Hardee's Food Sys., 143 F.3d 800, 804 (3d Cir. 1998)).

### b. Plan Documents

The Unions also argue that the prohibition on re-enrollment is not an enforceable term because it is not found in the Plan Documents, only in the Enrollment Kit. See Gridley, 924 F.2d 1310 at 1316; Heidgerd, 906 F.2d at 907; Alday, 906 F.2d at 665. The Unions assert that because none of the Plan Documents contain language expressly prohibiting re-enrollment, it should be permitted. See, e.g., Cigna Corp. v. Amara, 131 S. Ct. 1866, 1877 (2011) (holding that a plan's terms are found in the plan document); Cole v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., 533 F.3d 932, 937 (8th Cir. 2008) (stating that "Congress expressly required that all ERISA plan terms, in order to be enforceable, be written").

Hayes concedes that the Plan Document is silent as to any restrictions on re-enrollment. Hayes, however, disagrees that the silence means the participants can re-enroll (thus, opting in and out of the Plan at their pleasure). Hayes argues that such ability would be fundamentally at odds with how such health plans are intended to operate or with the requirements of their Plan for enrollment by a set deadline (January 31, 2010, or within sixty days of becoming Medicare eligible). Further, Hayes

14

contends it would be contrary to the provision of the Plan Document which provides that coverage under the Plan is lost when a participant ceases to make the necessary contribution to the Plan. (Adv. D.I. 32 at Ex. 9.)

The Court agrees with Hayes that while there is no express re-enrollment restriction in either the Plan Document or Settlement Agreement, it does not mean that re-enrollment is infinitely available. Under the Plan, the Retirees were provided notice of three finite restrictions on their ability to enroll, and remain enrolled, in the Plan: (1) Medicare-eligible Retirees had until January 31, 2010, to enroll, (2) pre-Medicare Retirees had sixty days to enroll once they became Medicare eligible, and (3) a Retiree had to make the necessary contribution to the Plan or he would be dropped from coverage. (Adv. D.I. 3d at Ex. 9.) The restriction on re-enrollment is consistent with the third restriction, that coverage is dropped when a required contribution is missed.

In the case at bar, the Settlement Agreement and Plan Document are both silent with regard to future enrollment periods for Retirees who elected not to enroll by the original deadline, or who lost coverage by failing to make the required contribution. Thus, once a Retiree failed to enroll – or was enrolled but subsequently dropped coverage – there is simply no provision in the Plan Document that would allow re-enrollment.

15

As there are no provisions which allow a participant the right to re-enroll in the Plan once coverage has been terminated, the Court finds that Hayes' refusal to allow re-enrollment is consistent with the terms of the Settlement Agreement and Plan Document. Therefore, the Court will grant Hayes' Motion for Summary Judgment and deny the Unions' Motion for Summary Judgment.

IV.   CONCLUSION

For the foregoing reasons, the Court will grant Hayes' Motion for Summary Judgment and deny the Unions' Motion for Summary Judgment.

An appropriate Order is attached.

Dated: April 25, 2013                BY THE COURT:

*[signature]*

Mary F. Walrath
United States Bankruptcy Judge